UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TRISTAR FINANCE, INC., a Washington corporation,<br><br>      Plaintiff,<br>  v.<br><br>ALLIED COMMERCIAL PARTNERS, INC., an Idaho corporation, and DAIRLD WURTZ, individually;<br><br>      Defendants. | Case No. C10-1766RSL<br><br>DEFAULT JUDGMENT ORDER |

This matter comes before the Court on Plaintiff's motion for entry of default judgment (Dkt. # 14) and the memoranda (Dkt. ##17, 18) it filed in response to this Court's Order re-noting Plaintiff's motion (Dkt. # 16). Plaintiff asks the Court to enter judgment in its favor in the amount of $880,907.51, inclusive of damages, costs, and attorney's fees. Having reviewed the complaint, the motion, and the documents filed in support, the Court finds as follows:

The default entered in the above-captioned matter has established the well-pleaded allegations of the Complaint pertaining to liability. Cripps v. Life Ins. Co., 980 F.2d 1261, 1267 (9th Cir. 1992). Judgment in favor of Plaintiff and against Defendants is therefore appropriate.

In regard to damages, the Court finds that Plaintiff has provided sufficient evidence to support an award of the following amounts:

  Breach of Contract Damages    $870,000.00

| | |
|---|---|
| Costs | $ 1,332.51 |
| Attorney's Fees | $ 2,250.00 |

Notably, the Court awards Plaintiff less attorney's fees than the amount requested: $9,6756.00. As the Court indicated in its previous Order, it is Plaintiff's burden to prove his damages, including attorney's fees. See Dkt. # 16. Moreover, even assuming that a party puts forth evidence of fees incurred, the Court must review the reasonableness of the requested amount and "exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'" Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). And in this case, the Court finds that while the hourly rates charged by Plaintiff's counsel are reasonable,[1] the number of hours claimed is not.

In support of Plaintiff's request for fees, Plaintiff's counsel candidly concedes that he did not record his work as he performed it because Plaintiff was a contingency fee client. Dkt. # 18 at ¶¶ 2–3; see Van Gerwen, 214 F.3d at 1045 n.2 (citing City of Burlington v. Dague, 505 U.S. 557 (1992)). As a result, he approximates that he spent 43 hours on the matter "reviewing documents and records, drafting pleadings, drafting discovery, drafting the joint status report and discovery plan, drafting initial disclosures, and engaging in multiple telephonic conversations with former counsel for the defense." Dkt. # 18 at ¶ 3. He provides no further breakdown or explanation. Id. Ideally, the Court would prefer that counsel provide greater detail and greater documentation regarding hours claimed, but the Court understands that the realities of practice are not always conducive to what may be ideal. Still, based on its experience with these matters, the Court only includes ten hours in its lodestar calculation. Van Gerwen, 214 F.3d at 1045; id.

---

[1] Plaintiff's counsel charges $225 per hour with six years of experience. Based on the Court's experience in and knowledge of the Washington legal market, it finds this rate reasonable.

ORDER NOTING MOTION FOR DEFAULT JUDGMENT - 2

at 1045 n.2 (noting as possibly relevant: "(1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal service properly; . . . and (11) awards in similar cases").

This case was filed on November 1, 2010, and Defendants appeared shortly thereafter. Defendants never filed an answer, but did take part in the filing of a joint status report and a joint discovery plan. No other material record activity occurred in this matter until Defendants' counsel moved to withdraw in September 2011. After that motion was granted, no activity occurred other than Plaintiff's moving for default on January 31, 2012, and default judgment in April 2012. In the Court's experience, cases of this minimal degree of complexity that have minimal docket activity prior to entry of judgment generally involve the expenditure of no more than eight hours of work: approximately two hours to draft the complaint and six hours to investigate the matter. Because the Court awards Plaintiff $558.65 in investigator costs, it reduces counsel's hours by three to eliminate redundancy, resulting in a total of five hours.

Of course, the Court realizes that this case was slightly irregular in that, while no answer was filed, a joint status report and a joint discovery plan were filed. Though each of these documents are brief, the Court recognizes that they required counsel to weigh his case, collaborate with opposing counsel, and draft initial disclosures. Moreover, counsel had to spend additional time responding to the Court's request for additional briefing.[2] The Court finds that Plaintiff could reasonably have expended an additional five hours on these tasks. The Court thus finds reasonable a total lodestar amount of $2,250.00.

Next, the Court considers whether the lodestar should be adjusted upward or downward in light of the remaining <u>Hensley</u> factors. <u>Van Gerwen</u>, 214 F.3d at 1045 & n.2. It finds that

---

[2] The Court sees no reason why Plaintiff's counsel would not have provided it with a definitive accounting of any hours spent on the supplemental briefing if it was expansive.

ORDER NOTING MOTION FOR DEFAULT JUDGMENT - 3

Plaintiff has not demonstrated that this is one of the "rare and exceptional cases" justifying departure from the presumptively reasonable lodestar amount. Id. (noting the need for "specific evidence on the record and detailed findings by the lower courts" (citations and internal quotation marks omitted)).

Finally, the Court wishes to briefly explain its damage award. As reflected in its prior Order (Dkt. # 16), the Court was initially reluctant to award Plaintiff more than $290,000 in contractual damages. Compare Complaint (Dkt. # 1) at ¶ 3.4 (alleging that Defendants agreed to pay Plaintiff 1% of all commercial loans secured), with id. at ¶¶ 3.10–11 (alleging that Plaintiff secured loans on Defendant's behalf totaling $29 million). Washington law voids liquidated damages clauses that "amount to a penalty." Watson v. Ingram, 124 Wn.2d 845, 850 (1994) (emphasis added). And it appeared to the Court that by affixing damages at three times the actual commission Plaintiff would have realized absent the breach, (Dkt. #1 at ¶ 4.2), the contractual provision relied upon by Plaintiff seemed to impose a quintessential penalty. Order (Dkt. # 16) (citing Watson, 124 Wn.2d at 850 ("Liquidated damages clauses are upheld if the following two factors are satisfied: First, the amount fixed must be a reasonable forecast of just compensation for the harm that is caused by the breach. Second, the harm must be such that it is incapable or very difficult of ascertainment.")).

However, Plaintiff has since provided the Court with the full text of the agreement at issue, and the Court can now see that the contract did not simply contemplate a finite amount of specified dealings. See Dkt. # 19-1 at 2–3. It was intended to form a mutually beneficial relationship wherein Plaintiff would allow Defendants access to its roster of investors in exchange for a cut of the deals made. To protect Plaintiff's vulnerable interest as broker, the agreement made clear that Plaintiff's investors were not to be solicited except through Plaintiff for a period of five years after introduction and that any breach of this agreement would expose

Defendants to treble damages to recompense Plaintiff for its loss of its exclusive relationship with its investors. Undoubtedly, the agreement's purpose was to protect against the very circumstance proven here: a party gaining access to Plaintiff's investors and then cutting Plaintiff out of future deals.

Given <u>this agreement</u>, and looking at the terms of the liquidated damages calculation as of the time of contracting, the Court finds both that the harm caused by a breach was "incapable or very difficult of ascertainment" and that "the amount fixed [was] a reasonable forecast of just compensation for the harm." <u>Watson</u>, 124 Wn.2d at 850–51; <u>Bascetta v. Advantage Equip. Leasing, L.L.C.</u>, 132 Wash. App. 1037, at *5 (2006) ("The courts take the view that 'liquidated damages agreements fairly and understandingly entered into by experienced, equal parties with a view to just compensation for the anticipated loss should be enforced.'" (citation omitted)). At the time of contracting, it would be impossible to ascertain the losses that might result were a party to strip Plaintiff of one of its investors. Moreover, given that the five-year duration of the non-solicitation agreement, three times actual losses seems a reasonable estimate of the amount of lost profits Plaintiff might endure were it to permanently lose an investor. The Court thus effectuates the liquidated damages provision.

\* \* \*

For all of the foregoing reasons, the Court directs the Clerk of Court to enter net judgment in Plaintiff's favor against the Defendants in an amount of $873,582.51, plus post-judgment interest at the statutory rate.

DATED this 16th day of April, 2012.

<u>/s/ Robert S. Lasnik</u>
Robert S. Lasnik
United States District Judge

ORDER NOTING MOTION FOR DEFAULT JUDGMENT - 5